UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) Case No.: 4:06CR00506 HEA (FRB) | |
| | ) | |
| SHAWN BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

COMES NOW Counsel and files the following memorandum on behalf of Defendant,

Shawn Brown ("Brown"):

Brown is scheduled for sentencing on January 29, 2007.  18 U.S.C. § 3553(a) assigns to

this Court the duty to impose a sentence that is sufficient, but not greater than necessary, to

comply with the statutory purposes of sentencing.  Those purposes are as follows:

(A)   to reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense;
(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

This Court must consider the factors below in calculating the required minimally

sufficient sentence:

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)   the need for the sentence imposed to accomplish each of the purposes of sentencing listed in § 3553(a)(2);

1

(3)     the kinds of sentences available;
(4)     the guidelines promulgated by the Sentencing Commission;
(5)     any pertinent policy statement issued by the Sentencing Commission;
(6)     the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
(7)     the need to provide restitution to the victims

18 U.S.C. § 3553(a).  The advisory guidelines constitute one factor this Court must consider in determining the minimally sufficient sentence to impose.  *See United States v. Winters*, 416 F.3d 856, 861 (8th Cir. 2005).  They deserve no greater weight than any other factor.  *Id*.  In the present case, that one factor excludes from its calculus variables Congress deems relevant to the federal sentencing process, including Brown's community involvement, full payment of restitution, family circumstances and remarkably low likelihood of recidivating.

## I      Brown's Community Involvement

Brown's community involvement reflects best his character.  He serves on the Disabled Athletes Sports Association ("DASA") board.  DASA provides physically impaired persons an opportunity to participate in sports and fitness activities designed to improve self-esteem.  He belongs to the Loyal Order of the Squirrel's, a civic group dedicated to improving the lives of the elderly and the handicapped.  He joined the board in 2001 and served as vice president in 2002.  He served as president in 2003.

Brown works with Habitat for Humanity, the nation's leading provider of cost-free housing for the poor and has served on its family selection, site selection and development committees.  Habitat for Humanity has constructed 18 homes in the St. Charles community since 1997.

Brown organized a hurricane relief collection and drove with 14 volunteers to Biloxi,

Mississippi in the aftermath of Katrina.  They brought a 53-foot trailer in tow from which they distributed over three days the items they collected.

In 2004 and 2005, Brown helped raise approximately $20,000 for a program that provides Christmas gifts to children who would otherwise go without.  He served as the Fall Achievement Fair Chairman for Cub Scouts Pack 961 and currently serves on the court of honor for the Boone Trails district Eagle Scouts.

As mayor, Brown developed a cost-free transportation system for seniors, volunteered at retirement community events and delivered food to homebound seniors with Meals on Wheels. He denominated April child abuse prevention month and served a the honorary chair of the 2005 Dove Rise, a benefit event for battered women.  Less close to home, Brown organized a care-package collection for United states troops in Iraq.  He included in the shipment an oversized flag signed by city co-workers.

## II      Additional Penalties Brown and His Family Have Incurred

Significant penalties have affected Brown and his family.  Western Extralite fired Brown after twelve years of service, and the City of St. Peters asked him to resign.  As a result, he lost the retirement plans towards which he worked and the health coverage on which his family depended.  He and his family lost a restaurant, a salon and the cars they used.  They sold their farm and recently placed their home on the market for sale.  Each of these pains they suffered very publicly.

## III.    Brown's Payment of Restitution

Brown has set aside $2,750 to make full restitution immediately following sentencing

## IV.    Brown's Family Circumstances

Brown's wife, Rhonda, suffers from a degenerative back condition for which two metal plates were inserted in her back.  Last year she broke five vertebrae.  Surgery proved helpful, but further surgery may yield complications.  As a result, doctors have prescribed steroid shots for the present.  Rhonda cannot sit for extended periods, bend over absent pain or move about with any ease.  It will prove exceedingly difficult for Rhonda to provide care for the children if Brown is imprisoned.  Notably, Rhonda and Brown pay her ongoing medical expenses out of pocket because of Brown's loss of health insurance.

Brown's son, Trent, has suffered significant psychological distress over the family's changed circumstances.  Recently, he presented a disturbing note to his teacher that reflects his distress.  A copy of the note has been faxed to this Court and the government.

**V       Brown's Reduced Likelihood of Recidivating**

The criminal history measure of the advisory guidelines principally estimates recidivism likelihood.  *See* U.S.S.G. Chapter 4, Introductory Commentary ("the specific factors included in § 4A1.1 and § 4A1.3 are consistent with the extant empirical research assessing correlates of recidivism and patterns of criminal behavior").  The measure relies primarily on two offender characteristics to produce its estimates:  prior convictions and prior terms of incarceration.  *See* U.S.S.G. 4A1.1; *see also* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 24 (2003).  The United States Sentencing Commission's 15 Year Report, however, concludes there are additional offender characteristics, which if incorporated into the criminal history measure, would improve its predictive power.  *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing*

*Guidelines, A Component of the Fifteen Year Report on the United States Sentencing Commission's Legislative Mandate*, 16 (May 2004) [hereinafter *Recidivism Report*].  The Commission identifies age, education, employment, marital status, illicit drug use and the offense of conviction as characteristics likely to improve that power.  *Id*. at 12-13, 28, 30.  The failure of the guidelines to incorporate these characteristics into the structure of its criminal history measure reduces the predictive validity of that measure and reveals the recidivism likelihood profiles it produces are incomplete.  *Id*. at 16.  Offenders with dissimilar recidivism rates receive similar sentences as a result of this failure, a result at odds with the fundamental purpose of the guidelines[1].  In the instant case, the data demonstrate Brown possesses a significantly reduced likelihood of recidivating relative to other offenders in Criminal History Category I.

Recidivism rates decline consistently as age increases.  *Id*. at 12.  Offenders in Criminal History Category I under the age of 21 recidivate at a rate of 29.5%.  *Id*. at 28.  Offenders in that same criminal history category between 21 and 25 years of age recidivate at a rate of 22.3%.  *Id*.  Offenders in Criminal History Category I between 31 and 35 years of age recidivate at a noticeably lower rate: 6.9%.  *Id*.  Brown is 435 years old.  *PSR* at ¶ 38.

Recidivism rates and education inversely relate.  *See Recidivism Report* at 12.  Offenders in Criminal History Category I who do not graduate from high school recidivate at a rate of

---

[1] "Offense characteristics bearing on the *harms* caused by the offense and the offender's culpability for those harms are especially relevant to assessing offense seriousness.  The need to protect the public from additional crimes by the offender makes the offender's risk of recidivism, as measured by their criminal history, also highly relevant.  Unwarranted disparity is eliminated when sentencing decisions are based only on offense and offender characteristics related to the seriousness of the offense, the offender's risk of recidivism, or some other legitimate purpose of sentencing." *Fifteen Years of Sentencing, An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform*, United States Sentencing Commission , at 79-80 (November 2004) [hereinafter "15 Year Report"].

21.3%%. *Id*. at 29.  Offenders in that same criminal history category who have completed some

college recidivate at the reduced rate of 13.9%.  *Id*.  Brown graduated from Blue Springs High

School on May 26, 1991.  *PSR* at ¶ 46.  He attended Metropolitan Community College the

following year.  *Id*. at ¶ 47.

Stable employment correlates with recidivism rates for offenders in the lowest criminal

history categories. *See Recidivism Report* at 12. Criminal History Category I offenders with

stable employment in the year prior to their instant offense recidivate at a rate of 12.7%.  *Id*. at

29.  Unemployed offenders in that same criminal history category recidivate at almost double that

rate: 20.6%. *Id*.  The presentence investigation report documents Brown's history of employment

from 1991 to present. *PSR* at ¶¶ 48-51.

The offense of conviction also correlates with recidivism likelihood.  *See Recidivism

Report* at 13.  Criminal History Category I offenders convicted of firearms related offenses

recidivate at a rate of 23.7%.  *Id*.  Offenders in that same criminal history category convicted of

robbery related offenses recidivate at a rate of 33.7%.  *Id*. at 30.  Brown falls within a class of

Criminal History Category I offenders whose recidivism rate is far less: 12.6%.  *Id*.

Marital status correlates with recidivism rates.  *Recidivism Report* at 29.  Married

Criminal History Category I offenders recidivate at a rate of:  9.8%.  *Id*.  Criminal History

Category I offenders who have never married recidivate at more than double that rate:  22.7%.

*Id*.  Brown and his wife, Rhonda, have been married for 15 years.  *PSR* at ¶ 40.

Illicit drug use correlates with recidivism likelihood, too.  *Recidivism Report* at 13.

"Overall, offenders using illicit drugs within one year prior to their instant offense have a higher

recidivism rate than those not using illicit drugs."  *Id*.  Criminal History Category I offenders

who use illicit drugs in the year prior to their instant offense recidivate at a rate of 21.9%.  *Id*. at 30.  Criminal History Category I offenders who do not use illicit drugs in the year prior to their instant offense recidivate at half that rate: 10.9%. *Id*.  Brown has no history of illicit drug use.  *PSR* at ¶ 45.

The data demonstrate an obvious correlation between recidivism and an identified set of offender characteristics:  age, education, employment, marital status, illicit drug use and the offense of conviction.  Brown possesses a unique combination of these characteristics that reveals his likelihood of recidivating is significantly reduced relative to other Criminal History Category I offenders.  The advisory guidelines, however, fail to incorporate these characteristics into the structure of the criminal history measure.  As a result, the measure fails to distinguish Brown from other offenders assigned to Criminal History Category I who do not possess the unique combination of characteristics he does possess.  That failure demonstrates the advisory guidelines range is, as applied to Brown, greater than necessary to satisfy the sentencing purpose of incapacitation.  *See* 18 U.S.C. § 3553(a)(2)(C).

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

Respectfully submitted,

By:   /s/ N. Scott Rosenblum
      N. SCOTT ROSENBLUM, #4206
      Attorney for Defendant
      120 S. Central Avenue, Suite 130
      Clayton, Missouri 63105
      (314) 862-4332
      (314) 862-8050 Facsimile

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) Case No.: 4:06CR00506 HEA (FRB) | |
| | ) | |
| SHAWN BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF SERVICE**

   The foregoing was electronically filed on January 26, 2007, with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Mr. Tom Albus, Assistant United States Attorney.

9

**Sentencing Memorandum**

ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC


By:     /s/ N. Scott Rosenblum
        N. SCOTT ROSENBLUM, #4206
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332
        (314) 862-8050 Facsimile